Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile
E-mail: rhacke@pji.org

Attorneys for Plaintiff
NATALYA V. KHIMICH

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| NATALYA V. KHIMICH, An Individual,<br><br>                              Plaintiff,<br><br>v.<br><br>OREGON HEALTH AND SCIENCE UNIVERSITY, A Public Corporation and Governmental Entity, and DOES 1 THROUGH 50, Inclusive, in Their Official and Individual Capacities,<br><br>                              Defendants | Case No.:<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR FAILURE TO ACCOMMODATE RELIGIOUS BELIEFS AND RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff NATALYA V. KHIMICH hereby alleges as follows:

## **PARTIES**

1.      Plaintiff is, and at all times relevant herein was, a registered nurse who was employed by Defendant OREGON HEALTH AND SCIENCE UNIVERSITY ("OHSU") from January 2007 until December 2, 2021.

2.      Plaintiff is also, and at all times relevant herein was, a practicing Christian and thus a member of a class of employees protected under Title VII of the federal Civil Rights Act of 1964 ("Title VII").  As permitted under Or. Admin. R. 333-019-1010(3)(a), Plaintiff sought from Defendant OHSU religious exceptions from the State of Oregon's requirement that all healthcare workers in the state be vaccinated against COVID-19 (the "Vaccine Mandate" or the "Mandate").  Having prayerfully considered the matter, Plaintiff objected to receiving COVID-19 vaccines because the manufacturers of all such vaccines then available in the United States at or near the time of the events giving rise to this case used cells from aborted babies in the production of the vaccines.  Plaintiff held sincere religious convictions that benefiting from abortion through taking a vaccine which used cells from aborted babies in the vaccine's development, testing, and production was impermissible given what the Bible teaches about life and the wrongfulness of ending innocent life.

3.      Defendant OHSU is, and at all times herein was, a public corporation and governmental entity performing governmental functions and exercising governmental powers, as indicated under Or. Rev. Stats. § 353.020.  OHSU is also, and at all times relevant herein was, an employer as defined by Title VII.  OHSU is openly pro-abortion, and its Vaccine Exemption Review Committee (the "VERC") openly expressed hostility toward the religious views of employees who sought religious exemptions from the Vaccine Mandate, including those of Plaintiff, declaring those beliefs to be unworthy of a religious exception.

4.      The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiff, who therefore sues Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to

and proximately caused injuries and damages to Plaintiff thereby, as herein alleged. The DOES include members of the VERC, who are, and at all times relevant here in were, directly responsible for denying Plaintiff's religious exemption request in violation of her constitutional rights. Plaintiff will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

5.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

6.      This Court has jurisdiction over all Defendants pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the constitution and laws of the United States.

7.      This Court may award the requested damages pursuant to 28 U.S.C. § 1343; the requested injunctive relief pursuant to 42 U.S.C. § 2000e-5(g) and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

## VENUE

8.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

9.      Venue is proper in the Court's Portland Division because the events giving rise to this Complaint occurred in the County of Multnomah and all agents, employees, or other persons working for, or in concert with, Defendant OHSU with regard to the events giving rise to this case are located in, employed in, and/or residents of the County of Multnomah.

## GENERAL ALLEGATIONS

10.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

11.     OHSU is Oregon's only public medical school and one of the few state-run universities in the United States devoted exclusively to educating doctors, nurses, pharmacists, and other healthcare professionals.  OHSU operates multiple hospitals in the Portland area in accordance with its healthcare-centered educational and clinical missions.

12.     OHSU is also openly in favor of abortion, which ends the life of an unborn child *in utero*.  In fact, on June 24, 2022 – the same date on which the Supreme Court overturned *Roe v. Wade*, the 1972 decision that made abortion legal nationwide, and declared that because there is no federal constitutional right to abortion, states are now free to decide for themselves whether abortion will be lawful within her borders – OHSU issued a press release headlined "Abortion Is Essential Healthcare" and affirmed its commitment to providing abortions and related services.  *See* Attached **Exhibit "A"** [a copy of said press release].[1]

13.     In August 2021, roughly 18 months after COVID-19 first arrived in Oregon, the Oregon Health Authority ("OHA"), pursuant to an executive order from Oregon's then-governor, Kate Brown ("Gov. Brown"), enacted the Vaccine Mandate, which required healthcare workers statewide to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010.[2]

14.     The Vaccine Mandate allowed healthcare workers to seek, and the hospitals, clinics, and other organizations who employed then to grant, religious exemptions from the vaccination requirement.  Or. Admin. R. 333-019-1010(3)-(4).

---

[1] Ironically, the press release also declares OHSU's commitment "to ensuring a ***respectful, welcoming and <u>inclusive</u> place*** to learn, ***<u>work</u>*** and receive care for all people regardless of gender, race, ***<u>religion</u>*** and sexual orientation" (emphasis added).  As the facts stated herein indicate, OHSU has failed to live up to this stated commitment.

[2] The OHA repealed the Vaccine Mandate on June 30, 2023.  *See* https://secure.sos.state.or.us/oard/viewSingleRule.action?ruleVrsnRsn=302917.

15.    The OHA's Vaccine Mandate also expressly stated that "[n]othing in this rule is intended to prohibit schools or school-based programs … from … ***Complying with Title VII of the Civil Rights Act, and state law equivalents***, for individuals ***unable*** to be vaccinated due to … a sincerely held religious belief." Or. Admin. R. 333-019-1010(5)(a) (emphasis added).

16.    In accordance with the OHA's Mandate, OHSU required all of its employees to either be vaccinated against COVID-19 or be granted a religious or medical exception by October 18, 2021.  However, OHSU flat-out warned Plaintiff and other employees that the VERC "expects that very few of the submitted requests for religious exemptions will be approved."  *See* Attached **Exhibit "B"** [a true and accurate copy of a notice OHSU sent en masse to all of its employees in which OHSU declares which beliefs it would not accommodate].

17.    Plaintiff is, and at all times relevant herein was, a registered nurse who worked for OHSU in a pre-surgical unit with patients and co-workers for nearly 15 years, from January 22, 2007 until December 3, 2021.

18.    Plaintiff was qualified to serve in her position and was an exemplary employee with no history of discipline during her 15-year tenure at OHSU.

19.    Plaintiff is also, and at all times relevant herein was, a practicing Christian who opposes abortion on religious grounds, as she believes life begins in the womb and that, accordingly, abortion is the taking of a human life – i.e., murder, which the Bible explicitly prohibits.  *See* **Exhibit "C"** [a true and accurate copy of Plaintiff's religious exemption request].

20.    When researching the COVID-19 vaccines currently available in the United States at the time the OHA issued its Vaccine Mandate, Plaintiff discovered that the vaccines' manufacturers used cells from aborted babies either in the testing and development of the vaccines or in the vaccines themselves.

21.     Based on much prayer and Bible study, Plaintiff determined that she was unable, in accordance with Christian principles, to take a COVID-19 vaccine. Accordingly, as allowed under Or. Admin. R. 333-019-1010(3)(a), Plaintiff submitted a religious exception request to OHSU.  *See* Ex. "C."

22.     In her religious exception request, Plaintiff provided multiple reasons why her faith prohibited her from taking COVID-19 vaccines.  *See* Ex. "C." Plaintiff extensively backed up her assertions with quotations from Scripture.  *Id.*

23.     The religious beliefs Plaintiff holds, and at all times herein held, that render her unable to take a COVID-19 vaccine include the following [*see* Ex. "C"]:

    a.  Her body is the temple of the Holy Spirit (1 Corinthians 6:19-20), and she has made a personal commitment to refuse any contaminants, toxins, hazardous substances, foreign DNA, and animal parts into her body;

    b.  Abortion murders an innocent life (Jeremiah 1:5), so to become an active participant or beneficiary of abortion contradicts the teachings of the Bible and is, accordingly, sinful; and

    c.  To sin would jeopardize her relationship with God and lead to spiritual death – i.e., eternity in hell.

24.     Furthermore, Plaintiff acknowledged in her religious exception request that she had taken a flu vaccine four years prior.  *See* Ex. "C."  After receiving the flu vaccine, Plaintiff became extremely sick, developed allergies that she had never experienced before, and suffered rheumatoid arthritis – a malady which she had no family history of.

25.     Plaintiff later learned that the flu vaccine's manufacturers had used cells from aborted babies in the vaccines' testing and development.  *See* Ex. "C."

26.    Believing she had defiled the temple of the Holy Spirit, Plaintiff felt "convicted" – a spiritual term Christians often use to describe one's awareness of his or her sin and calling to repent (that is, to turn away from sin) and be reconciled to God.  Accordingly, Plaintiff vowed, moving forward, not to defile her body by using vaccines connected to abortion again.

27.    Plaintiff has lived up to her religious calling to abstain from the use of vaccines connected to abortion ever since.

28.    OHSU's policy concerning religious exceptions declared that anyone who had received a vaccine of any kind within the previous five years would automatically be denied a religious exception.  *See* Ex. "B."  OHSU's policy made no allowance for the following:

    a. Religious practitioners can be OK with vaccines in general, or with certain vaccines, and still oppose receiving a COVID-19 vaccine due to the vaccines' connection to abortion;

    b. Religious practitioners' views can and do evolve – the fact that they are late in crystallizing does not make them less sincere; and

    c. The Bible allows for repentance – i.e., turning away from past sins and committing them no longer.  Repentance, in fact, is a central part of the Christian faith, and Plaintiff displayed it with regard to receiving vaccines involving the use of cells from aborted babies.

29.    Nonetheless, on or about October 4, 2021, OHSU notified Plaintiff via e-mail that the VERC had rejected her religious exception request.

30.    In denying Plaintiff's religious exception request, the VERC did not assert that OHSU could not accommodate her sincerely held religious beliefs due to undue hardship.  Rather, in accordance with OHSU policy, the VERC deemed several religious beliefs Plaintiffs had asserted to be unworthy of accommodation.

31.     Among those beliefs were "an objection to the vaccine on the basis of fetal cell concerns, in the vaccines or in testing and development" and "an objection to the COVID vaccine based upon bodily integrity of sanctity and/or a belief that the vaccine is unclean." Plaintiff held such religious objections.

32.     Accommodations that would have let Plaintiff keep working despite not having received COVID-19 vaccines were available. OHSU could have instructed Plaintiff to continue following COVID-19 mitigation strategies already in place which would not have created any undue burden for OHSU. Examples of such accommodations include masking, social distancing, and regular testing.

33.     OHSU could also have taken Plaintiff's natural immunity, proven by an antibody test which she submitted to VERC, into consideration and allowed her to continue working as she had the same if not better protection from COVID-19 as her vaccinated colleagues.

34.     On October 20, 2021, OHSU placed Plaintiff on unpaid leave. A true and accurate copy of the letter notifying Plaintiff of her placement on unpaid leave is attached hereto as **Exhibit "D."**

35.     OHSU fired Plaintiff on or about December 3, 2021. A true and accurate copy of Plaintiff's termination letter is attached hereto as **Exhibit "E."**

36.     Due to OHSU's termination of her employment and difficulty obtaining comparable employment with another employer due to a dearth of available jobs for healthcare professionals not vaccinated against, Plaintiff has suffered the following monetary damages:

     a.  Wages in an amount exceeding $10,000 per month;

     b.  Roughly $1,400 in medical expenses; and

     c.  Loss of her Public Employment Retirement System (PERS) retirement plan, and life and short-term disability insurance.

37.    Plaintiff has made good-faith efforts to mitigate her damages despite her struggles to find comparable employment in the healthcare profession.  She is currently making significantly less money – without retirement or healthcare benefits – as a driver for DoorDash.

38.    Due to OHSU's termination of her employment, Plaintiff has also suffered emotional turmoil, anxiety, depression, stress, fear, panic attacks, insomnia, stress-induced headaches, migraines, nausea, vomiting, and abandonment by colleagues.

39.    As a condition of filing the herein lawsuit, Plaintiff has obtained a right-to-sue letter from Oregon's Bureau of Labor & Industries.  A true and accurate copy of that letter is attached hereto as **Exhibit "F."**

40.    Attached hereto as **Exhibit "G"** is a printout from the website TimeandDate.com showing when the 90-day statute of limitations set forth in Plaintiff's right-to-sue letter is set to expire.  Plaintiff has attached this printout hereto as proof that she has timely filed this lawsuit.

## FIRST CAUSE OF ACTION:
### Violation of Title VII – Failure to Accommodate
### [42 U.S.C. § 2000e-2]
### Against Defendant OHSU

41.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

42.    Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

43.    For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

44.    Defendant OHSU is, and at all times relevant herein was, an employer as defined by Title VII.

45.    The term "religion," for Title VII's purposes, "includes __*all*__ aspects of religious observance and practice, *as well as belief*[.]"  42 U.S.C. § 2000e(j) (emphasis added).

46.    As a Christian, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

47.    Plaintiff holds sincere religious beliefs that due to COVID-19 vaccine manufacturers' use of cells from aborted babies in the testing, development, and production of the vaccines, receiving the vaccination would make her complicit in the murder of the unborn, which she believes to be sinful and disruptive to her relationship with God.

48.    Plaintiff holds a sincere belief that because she has previously – albeit unknowingly – took a vaccine involving the use of fetal cells and suffered a severe violent reaction to the vaccine as a result, she must not take such a vaccine moving forward lest she incur the wrath of God.  *See* Ex. "C."

49.    Plaintiff's bona fide religious beliefs conflicted with her employment-related duty to receive a COVID-19 vaccine.  *See* Ex. "C."

50.    Plaintiff informed her employer, Defendant OHSU, of the conflict between her religious beliefs and employment-related duties.  *See* Ex. "C."

51.    Defendant OHSU subjected Plaintiff to discriminatory treatment by (1) declaring her beliefs unworthy of a religious exception, (2) placing her on unpaid leave on or about October 20, 2021, and (3) by firing her on or about December 3, 2021.  *See* Exs. "D" and "E."

52.    Defendant OHSU made no attempt to accommodate Plaintiff's bona fide religious beliefs, as Title VII requires.

53.     Defendant OHSU never made any assertion to Plaintiff that OHSU would incur undue hardship by accommodating Plaintiff's beliefs.

54.     Defendant OHSU could, and should, have easily accommodated Plaintiff's sincere religious beliefs by allowing Plaintiff to continue working as she was willing to work under reasonable accommodations and had acquired natural immunity to COVID-19.

55.     OHSU offered no such accommodation to Plaintiff, opting to take adverse employment actions against her instead.

56.     Animus toward Plaintiff's specific religious beliefs is truly what motivated Defendant OHSU to get rid of Plaintiff, any assertion by OHSU to the contrary notwithstanding.

57.     Based on the foregoing, Defendant OHSU has unlawfully discriminated against Plaintiff in violation of Title VII.

**SECOND CAUSE OF ACTION:**
**Violation of Title VII – Religious Discrimination**
**[42 U.S.C. § 2000e-2]**
**Against Defendant OHSU**

58.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

59.      "To establish a prima facie case of religious discrimination, [Plaintiff] must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) '*either* that similarly situated individuals outside her protected class were treated differently, *or* other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" *Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1022 (D. Or. 2008) [quoting *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743-44 (9th Cir. 2004)].

60.    As a Christians Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

61.    Plaintiff was qualified for her position with OHSU.

62.    Defendant OHSU subjected Plaintiff to multiple adverse employment actions – first by threatening to place her on unpaid leave and/or terminate her employment if she did not receive a COVID-19 vaccine, then by placing her on unpaid leave on or about October 18, 2021, and ultimately by firing her on December 2, 2021.  *See* Exs. "D" and "E."

63.    Defendant OHSU treated similarly situated individuals outside Plaintiff's protected class differently: Implicit in a statement OHSU made to employees that the VERC "expects that very few of the submitted requests for religious exemptions will be approved" is that *__some__* exceptions would be approved.  The fact that OHSU circulated a list of beliefs it deemed unacceptable – i.e., that were unworthy of accommodation – implies that only those individuals who held the right beliefs would receive accommodations.

64.    At the very least, the facts that (1) OHSU circulated a list of beliefs it deemed unacceptable – i.e., that were unworthy of accommodation – and (2) denied Plaintiff a religious exception because she had those beliefs are circumstances that give rise to an inference of religious discrimination.

65.    Based on the foregoing, Defendant OHSU has committed religious discrimination against Plaintiff in violation of Title VII.

### THIRD CAUSE OF ACTION:
**Violation of Constitutionally Protected Freedom of Religion**
**[U.S. Const. amend. I; 42 U.S.C. § 1983]**
**Against DOES 1-50**

66.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

67.    Under 42 U.S.C. § 1983, anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

68.    Under 42 U.S.C. § 1983, state actors like the VERC's members – whose identities have yet to be ascertained – forfeit their qualified immunity from liability when, acting in their official capacities, they deliberately infringe on constitutional rights: "[A] state official who violates federal law '*is in that case stripped of his official or representative character and is subjected in his person to the consequences* of his individual conduct.'" *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974) (emphasis added).

69.    The Free Exercise Clause of the U.S. Constitution's First Amendment, made applicable to states via the Fourteenth Amendment, prohibits state governments from infringing on individuals' freedom of religion.  The Fourteenth Amendment prohibits state governments from depriving any person of liberty without due process of law.  U.S. Const. amend. XIV, § 1.

70.    "The Free Exercise Clause protects against government hostility that is masked as well as overt."  *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (1993) (*Lukumi*).  Acting under color of state law, the VERC's members – whose identities have yet to be ascertained – expressed overt hostility toward the religious beliefs of certain OHSU employees, including and especially Plaintiff, by declaring which religious beliefs were worthy of religious exceptions from Gov. Brown's Vaccine Mandate and which religious beliefs were not.

71.    Furthermore, "[w]hen the power, prestige and financial support of government is placed behind" – or, for that matter, against – "a particular religious

---

belief, ***the indirect coercive pressure upon religious (individuals) to conform to the prevailing approved religion is plain***.” *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 221 (1963) (*Schempp*) (emphasis added).  Acting under color of state law, the VERC effectively declared that because multiple high-profile religious organizations had expressed approval of COVID-19 vaccines despite her connection to abortion, OHSU employees belonging to those organizations’ faith essentially had no excuse for not receiving a COVID-19 vaccine.  In so doing, the VERC’s members overstepped their constitutional bounds, pressuring Plaintiff to conform to the prevailing approved religion.

72.    Acting under color of state law, the VERC’s members effectively penalized Plaintiff for adhering to her sincere, religiously-based objections to receiving a COVID-19 vaccine by threatening to fire, and then firing, Plaintiff.  The VERC’s members forced Plaintiff to choose between the government-provided benefit of continued employment with OHSU and following her religious beliefs.  This, the U.S. Constitution prohibits.

73.    Even assuming Defendant OHSU had a compelling interest in halting the spread of COVID-19 to its employees and patients, the VERC’s members could – and should – have reasonably accommodated Plaintiff's beliefs and let her keep working.  The VERC’s actions in establishing and enforcing a discriminatory religious exception were not narrowly tailored and cannot survive strict scrutiny under the First Amendment.

74.    Based on the foregoing, VERC’s members, identified herein as DOES 1-50, have deprived Plaintiff of her constitutionally protected freedom of religion and should be held accountable accordingly.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

## ON ALL CAUSES OF ACTION:

1.      For reinstatement to her position as a nurse at OHSU, complete with all vacation time, sick leave, seniority, and healthcare, life/disability insurance, and other benefits fully restored;

2.      For economic damages in an amount according to proof at trial;

3.      For non-economic damages in an amount according to proof at trial;

4.      For punitive damages in an amount according to proof at trial;

5.      For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

6.      For such other and further relief as the Court may deem proper.


Dated: August 24, 2023                    PACIFIC JUSTICE INSTITUTE

                                          __/s/ RAY D. HACKE_____
                                          Ray D. Hacke
                                          Attorneys for Plaintiffs
                                          NATALYA KHIMICH

# EXHIBIT "A"

# EXHIBIT "A"

Browse Stories

Awards and Accomplishments

Community

COVID-19

Education

Health Care

Labor Relations

Philanthropy

Research

Viewpoint

Share    Tweet    Share    Email    Print

# Abortion is essential health care

June 24, 2022    Portland, Oregon



*Content warning: In support of trauma-informed communications, please be aware that this message contains topics that may be activating for some community members. The* Confidential Advocacy Program *can be reached 24/7 by calling 833-495-2277. Additional resources for OHSU members are available* here *.*

Every day at OHSU, thousands of dedicated researchers, clinicians, students and staff advance our focus of healing, teaching and discovery, to improve not just the lives of Oregonians, but of all those who interact with this institution. They do so with science as their guide and the belief that every individual should be able to make informed health care decisions for themselves, including whether or not to access abortion care.

History shows us that the impact of today's decision by the United States Supreme Court to roll back the protections of *Roe v. Wade* guarantees one thing: Abortion will become unsafe and less accessible for far too many people in this country. It should not be this way. We believe that access to health care of any kind, including abortion, should not be limited by location, resources, bias, prejudice or the absence of care.

Here at OHSU, we are resolute in our commitment to provide the full continuum of sexual and reproductive health care — including abortion — to all who seek it, and to educate the next generation of clinicians and advance groundbreaking research. As we face a post-*Roe* world, we acknowledge the increased responsibility we have, along with other providers in Oregon, to ensure people from out-of-state are able to access the critical care they need.

To the individuals who need this care, we stand with you. To the dedicated clinicians and advocates who work tirelessly to provide and advance abortion care, we stand with you. OHSU is committed to doing everything we can to support and advocate for you and for equitable access to comprehensive reproductive services for all people.

*OHSU is committed to ensuring a respectful, welcoming and inclusive place to learn, work and receive care for all people regardless of gender, race, religion and sexual orientation. Our position on this issue is based on our obligation to improve the health and well-being of Oregonians and beyond, not on politics. In taking a position on any issue, OHSU acknowledges that some within the community may disagree. We encourage respectful conversation and feedback so that we may all better understand one another. Only together can we fulfill our mission and stimulate the spirit of inquiry, initiative and cooperation among students, faculty and staff.*

---


Previous Story
OHSU statement on gun violence, public safety

Next Story
PUBLIC NOTICE: Northwest Commission on Colleges and Universities to conduct comprehensive evaluation of OHSU on Oct. 24-26, 2022


Media Contact

OHSU Communications

503 494-8231 ☎

Email OHSU ✉

Related


OHSU's position is steadfast: Abortion is health care

# EXHIBIT "B"

**Exhibit 3**

**ellie.chegarnov@outlook.com**

---

**From:** Connie Seeley <now@ohsu.edu>
**Sent:** Thursday, September 30, 2021 6:13 PM
**To:** Ellie Chegarnov
**Subject:** Sept. 30 update

OHSU**NOW**

*Contact Language Services if you need help translating.*
*ትርጉም የሚፈልጉ ከሆነ፣ Language Services (የቋንቋ አገልግሎትን) ያግኙ.*
*Molimo Vas da kontaktirate Language Services (Jezički Servis) ukoliko Vam je potrebna pomoć pri prevođenju.*
*Si necesita ayuda con traducción, comúniquese con Language Services (Servicios de Idiomas).*
*ติดต่อ Language Services (บริการด้านภาษา) หากท่านต้องการความช่วยเหลือในการแปลภาษา.*
*Liên lạc Language Services (các Dịch vụ Ngôn ngữ) nếu bạn cần sự trợ giúp thông dịch.*

*Lee el mensaje de ayer.*

 Share your experiences with the **Covington Hotline**

## Today's highlights

- **All OHSU employees and students will need to be compliant with OHSU's vaccination policy by Oct. 18.** Today, we want to reiterate why this is so important and why we have narrow criteria for approving exception requests.
- **The more the merrier: Occupational Health can provide your COVID-19 booster.** No need to try OHSU pharmacies.
- **Automated Box content copy starts tomorrow, Oct. 1.** Do not access or use the From_Box folder in OneDrive until you are notified by ITG that the file migration is complete.
- **Are you experiencing compassion fatigue?** A powerful message from OHSU's Dr. George Keepers.
- **Only electronic badge requests accepted Oct. 4:** All requests must also be approved by a manager/OHSU sponsor.
- **Inbound FedEx shipments have been experiencing substantial delays due to national and worldwide labor shortages.** Please account for these delays when you place your orders.

**E - #1**
**Page 22**

# Narrow exceptions process will help keep OHSU and our community safe

As you know, all OHSU employees and students will need to be compliant with OHSU's vaccination policy by Oct. 18. Across OHSU's more than 22,000 members, some of you have requested an exception for religious or medical reasons.

On Sept. 22, OHSU shared its narrow criteria for approving exception requests, and some of you have asked – why is this so narrow? OHSU has a responsibility to our members, our patients and our community to keep everyone as safe as possible. Vaccination against COVID-19 is an important tool in creating this safe environment.

There are valid reasons that a person may not be able to get vaccinated, but OHSU, and many of our peers, are using narrow criteria so we can ensure that the lens applied is truly a medical or religious one. In preliminary reviews, **OHSU's exception review panel expects that very few of the submitted requests for religious exceptions will be approved**.

This is in part because social, political or economic philosophies or personal preferences are not considered to be religious beliefs, and will not qualify a member for a religious exception. Examples of beliefs that do **not** qualify for a religious exception include:

- Arguments for free will or against compulsion.
    - This does not refer to the vaccine, but instead your right to have a religious freedom or conscientiously object to the vaccine.
- Concerns over vaccine safety or content.
    - These are not religious arguments and often inconsistent with proven facts.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
    - These professed beliefs are personal moral choices and/or conscientious objections rather than a tenet of a religious faith.
    - No fetal tissue or cells are contained in any of the vaccines currently available under FDA approval or emergency use authorization in the U.S.
    - While they played no role in their development or production, HEK-293 cell lines created over 50 years ago were used in confirmatory testing of the current mRNA vaccines. Cells from the same line have commonly been used in biologic research since the late 70s. This cell line is used in the testing of many common medicines, including Tylenol, Advil, Aspirin, Claritin, Benadryl, Pepto-Bismol, Mucinex, Tums and Prilosec, among many others.
- A personal revelation from God about the vaccine, an objection to the vaccine based upon bodily integrity or sanctity, and/or a belief that the vaccine is "unclean."
    - These are personal moral choices and/or conscientious objection rather than a tenet of a religious faith.

The exception review panel is working through these requests now. However, each review is requiring a high level of individual assessment by multiple reviewers by representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness.

With the rigorous reviews, **it is unlikely that the committee will complete all the reviews by Saturday, Oct. 2**.

E - #1
Page 23

As you know, if you are not compliant with the policy by Oct. 18, you cannot work, study or volunteer at OHSU on Oct. 19.  Monday, Oct. 4, is the last day that you could get a Johnson & Johnson vaccine in time to be fully vaccinated and compliant with the policy by Oct. 18.

If you believe your request may not be approved based on these criteria, we are here to help. You can still get vaccinated, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you. Remember to enter your vaccination record as soon as possible in Enterprise Health, as well. It may also be helpful to check that your Enterprise Health record is up-to-date, since OHSU is using that to determine compliance.

If you have questions about the vaccines, email AskOHSU@ohsu.edu, and we can connect you with someone who can answer your questions. You're also encouraged to join an open Q&A forum this Friday, Oct. 1, at 11 a.m.

# The more the merrier: Occupational Health can provide your COVID-19 booster

Occupational Health continues to have ample capacity for giving COVID-19 booster doses to employees and students. Read this OHSU Now post for all the details about making an appointment in Enterprise Health. If you only need the flu vaccine, you are still welcome to walk in on Wednesdays.

Please let our OHSU pharmacy colleagues focus on their work prioritizing patient care.

# Reminder: Box-to-OneDrive automated content copy starts tomorrow

Here's what you need to know:

- Your Box files and folders will be copied by ITG through a series of automated syncs. This process is **entirely automated** and will happen behind the scenes, allowing you to continue working in Box without interruption.
- Your files will begin to appear in a **From_Box folder in OneDrive** starting tomorrow and continuing through Dec. 31, 2021. Read the Sept. 23 OHSU Now post.
- Please **do not use the files in the From_Box folder** in OneDrive until you are notified by ITG that the migration is complete.

Keep working on your files in Box, take a File Management in the Cloud training and start exploring and learning OneDrive. Read the Box Migration FAQs to learn more.

# Are you experiencing compassion fatigue?

In a letter to the Department of Psychiatry on July 30, 2021, George Keepers, M.D., professor and chair of psychiatry, OHSU School of Medicine, wrote, "…There's another surge gaining strength by the day in the country, a surge of anger at the people who have refused to be vaccinated, who have denied the tragedy of this pandemic … ignored scientific experts, ignored the pleas of overworked, despairing health care professionals…."

As Dr. Keepers explains, this anger is symptomatic of compassion fatigue, which can be a normal consequence of working in a helping field. Health care providers and those in professions based on service are particularly vulnerable to compassion fatigue – a reality made precipitously worse by the pandemic.

# EXHIBIT "C"

OFFICE OF THE DIRECTOR
Office of the State Public Health Director



# COVID-19 Vaccine Religious Exception Request Form

**Instructions:** Please refer to the Instructions for filling out the COVID-19 Religious Exception Request Form. If you are requesting an exception from the COVID-19 vaccination requirement for religious reasons you must fill out this form and **submit it to your employer or other responsible person.**

### DO NOT SEND THIS FORM TO THE OREGON HEALTH AUTHORITY.

I am requesting an exception from the COVID-19 vaccination on the basis of a sincerely held religious belief.

| Individual's name: Natalya Khimich | Date of birth: 8/18/1983 |
|---|---|
| Phone number: 503-522-3204 | |
| Employer/Organization: OHSU | Job Title/Position: RN |

## Please check the boxes below as appropriate and complete related questions:

☑ Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination

*See attachment*

I certify the above information to be true and accurate and that I sincerely hold the religious beliefs described above.

| Signature: | Date: 10/16/2021 |
|---|---|

Please note that if your exception request is approved, you may be required by your employer or other responsible party to take additional steps to protect you and others from contracting and spreading COVID-19. Workplaces are not required to provide this exception accommodation if doing so would pose a direct threat to the excepted individual or others in the workplace or would create an undue hardship.

**Document accessibility:** For individuals with disabilities or individuals who speak a language other than English, OHA can provide information in alternate formats such as translations, large print, or braille. Contact the Health Information Center at 1-971-673-2411, 711 TTY or COVID19.LanguageAccess@dhsoha.state.or.us.

1 of 1                                    OHA 3871 (9/01/2021)

**Item #4**
**Page 72**

I am requesting a religious exemption, as a Christian, from receiving a COVID-19 vaccine. My biblical conviction as a believer of the Word of God is that abortion is murder, which is a sin. I am pro-life. My belief includes that innocent life, from conception to natural death, is sacred to God which is written in Jeremiah 1:5. Vaccine development and/testing uses aborted fetal cell lines, which is in direct violation to God's commandment to not murder. Pfizer and Moderna were protein tested utilizing the abortion derived cell line HEK-293. Johnson and Johnson used cell line PER.C6. My faith forbids me to be an active participant or beneficiary of aborted life.

My last flu shot was four years ago, prior to my knowledge of manufacturing, development and testing of vaccines. I was confused as to why my immune system was overreacting to the flu shots; I ended up getting really sick, developed allergies, which I never experienced before (which resolved since I stopped getting the flu shot) and I ended up with rheumatoid arthritis (with no family history of). After seeking and praying, God led me to where I became aware of fetal cell use in vaccines and it became clear to me that my over reactive immune system was triggered because I was violating the temple of God. Since then I have made a personal commitment to God that I would not defy my body again because my body is the temple of the Holy Spirit and my body belongs to God (1 Cor 6:19-20). I cannot put any contaminants, toxins, hazardous substances, foreign DNA, and animal parts into my body.

If I do not listen to the Holy Spirit that lives in me, I would be living in sin. As a result would violate my conscience, jeopardize my relationship with God, and lead to spiritual death.

The COVID-19 vaccine is contradictory to my sincerely held belief, which I must reject, on moral grounds because of its connection to fetal cell use. I hope you understand my position and approve my request based on my sincerely held religious beliefs.

Thank you for your consideration.

Sincerely,

Natalya Khimich

<u>Item #4</u>
<u>Page 71</u>

ER-33

E - #1
Page 27



## OHSU Member COVID-19 Vaccine
## Religious Exception Request Form

*OHSU Members requesting religious exceptions must personally complete Part A, B and C. All OHSU Members requesting an exception must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into Enterprise Health.*

### Part A: OHSU Member Name and Identifying Information

Name: Natalya Khimich

Mailing Address: 9424 N Tioga Ave

City: Portland          State: OR      Zip Code: 97203

Preferred Pronoun(s):                    Preferred Phone: 503-522-3204

Preferred Email: Khimichn @ ohsu. edu          Preferred Method of Contact: email

Employee/Student ID #: 552016      Job Title: RN

Manager/Supervisor: Hayley Ruffalo

Department: 6A

### Part B:  Religious Exception Request

Name of Religion:  Christian

_____  Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

             see attached form

Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination

             see attached form

Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

             see attached form

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate:

**Item #4**
**Page 70**



# OHSU Member COVID-19 Vaccine
## Religious Exception Request Form

Name of Professional: Lew Wootan

Title: Pastor

Represented Organization: The River Church

Street Address: 4675 Portland Rd. NE, #190

City: Salem    State: OR    Zip Code: 97305

Telephone: 503-385-8721    Email: theriverkeizer@gmail.com

How long have you had a relationship with the recognized religious professional?:

~ 1 year

**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.

Signature

## Part C: OHSU Member Attestation

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are very safe and highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly limited and the development of viral variants can be slowed . Each individual of a community can contribute to this protective approach.

By signing this form, I acknowledge and affirm that:

- I am requesting a religious exception from receiving the COVID-19 vaccination.
- OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.
- I understand that COVID-19 has caused a pandemic that continues to sicken and kill many people.
- I understand if I am not vaccinated, I may become sick with COVID-19. This may put my family, coworkers, friends or people around me at risk of serious illness, disability or death.
- If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.

**Item #4**
**Page 69**



# OHSU Member COVID-19 Vaccine
## Religious Exception Request Form

- I have received information about how the vaccine helps protect against COVID-19.
- I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.
- If I want to, I have been able to ask questions and have my questions answered.
- It is my decision to decline vaccination at this time, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. Notwithstanding, I am requesting a religious exception from the COVID-19 vaccine.

Signature of OHSU Member: _____    Date: 9/15/2021

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.



**The River Church**
4675 Portland Road NE, #190
Salem, OR 97305
TheRiverKeizer@gmail.com • www.TheRiverNW.com
(503) 385-8721

September 15, 2021

Oregon Health & Science University
3181 SW Sam Jackson Park Rd
Portland OR 97239

RE:   **Religious Exemption for Vaccination of Natalya Khimich**

TO WHOM IT MAY CONCERN:

I am the Senior Pastor of The River Church, a Salem, Oregon based ministry. I know Natalya Khimich personally and can in confidence attest to her regular and active participation in our ministry. Natalya is an online affiliate, but also active in our other community-oriented outreach ministries.

Natalya's faith establishes that abortion is the murder of human beings and murder is a sin. Her faith establishes a firmly held religious conviction specifically against any vaccinations derived from the research used to create Wistar Institute's RA/27/3 or Wistar's WI-38 and all other vaccinations derived from the research and/or use of aborted human tissue.

Additionally, our faith establishes a firmly held religious belief against all vaccination stemming from the fact that the Bible teaches that all people are made in the image of God and refusal to receive a vaccination is supported by this scripture: "Know ye not that ye are the temple of God, and that the Spirit of God dwelleth in you? If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are. ... What? Know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own?" 1 Corinthians 3:16-17, 6:19 (KJV). Our faith maintains the firmly held religious belief that our bodies are the temple of the Holy Spirit. It is a God-given responsibility and requirement for us to protect the physical integrity of our body against unclean food and injections.

Because of Natalya's firmly held religious conviction against taking vaccinations, she is exempt from taking any vaccination as it violates her right to freedom of conscience as guaranteed by the U.S. Constitution.



**THE RIVER CHURCH**
CHURCH FOR CHANGE

Oregon Health & Science University

RE:    **Religious Exemption for Vaccination of Natalya Khimich**
September 15, 2021
Page Two

With the following information in mind, Natalya Khimich would like to inform you that she is exercising her legal right to legally assert her firmly held conviction of conscience against receiving any vaccinations. If you have any questions or wish to have further conversation on this matter, please feel free to contact me.

Sincerely,

Pastor Lew Wootan
The River Church
4675 Portland Rd. NE, #190
Salem, OR 97305

cc: Natalya Khimich

# EXHIBIT "D"

# EXHIBIT 1



OHSU

Oct. 20, 2021

Khurnich, Natalya V
9424 N Tioga Ave
Portland, OR 97203

### Re: Important notice about your employment

This letter serves as
your OHSU position e
OHSU Policy 03-30-150 COVID-19 Immunizations and Education.

You will remain on unpaid leave for up to 45 days. If you become fully
vaccinated within the 45 days, you may return to your position once you
provide OHSU with documentation of your COVID-19 vaccination.

If you remain non-compliant with the policy after 45 days (Dec. 2, 2021),
you will be laid o
will end.

The enclosed FAQ provides additional information regarding OHSU
network access, bene

OHSU values the contributions you have made to OHSU and those we
serve. We regret the loss of any OHSU member as a result of the vaccine
policy. While we acknowledge each individual's right to their opinion and
choice about vaccination, we hope you understand OHSU's
that vaccinations are the key to ending this devastating pandemic and
protecting our community.

Employee ID#: 55206

Enclosure: Frequently Asked Questions

**Human Resources**

hrcomm@ohsu.edu

Mail code: HR
3181 S.W. Sam Jackson Park Rd.
Portland, OR 97239

# EXHIBIT "E"



OHSU

Dec. 3, 2021.

Khimich, Natalya V
9424 N Tioga Ave
Portland, OR 97203

Human Resources

hrcomm@ohsu.edu

Mail code: HR
3181 S.W. Sam Jackson Park Rd.
Portland, OR 97239

### Re: Final notice about your employment

This letter serves as
terminated e
03-30-150 COVID-19 Immunizations and Education.

A
net pay is zero, it's because applicable deductions o
however, the gross earnings will be reported on your W-2 form.

If you had active bene
continue through Dec. 31, 2021. Within 45 days following termination of
your bene
continue bene

Please work with your former supervisor to arrange the return of any
OHSU equipment, keys, and your ID badge as soon as possible, if necessary.

Thank you for your service to OHSU and the people of Oregon. We regret
losing you as an OHSU member, and wish you the very best in your future
endeavors.

OHSU Human Resources

Employee ID#: 55206

# EXHIBIT "F"



**CHRISTINA E. STEPHENSON**
Labor Commissioner

June 5, 2023

NATALYA KHIMICH
JANZEN LEGAL SERVICES, LLC.
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:    Complainant:   Natalya Khimich
       Respondent:    Oregon Health & Science University
       Case #:        EEEMRG220805-11212
       EEOC #:        38D-2022-00795

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing: June 5, 2023**

Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney

 Portland • Salem • Eugene

 oregon.gov/boli
Help@boli.oregon.gov

971-245-3844
Ore. Relay TTY: 711



E - #
Page 38

# Substantial Weight Review Procedure

Complaints co-filed under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), or the Americans with Disabilities Act (ADA) are enforced by the Equal Employment Opportunity Commission (EEOC).  The EEOC generally will adopt the findings of the Civil Rights Division; however, the Complainant has the option of requesting a review of this action.  Upon receipt of the attached letter, the Complainant has 15 days to make a written request for a review to:

Equal Employment Opportunity Commission

Federal Office Building

909 First Avenue #400

Seattle WA  98104-1061

Rev. 10-4-10

## Civil Rights Division – Bureau of Labor & Industries
## Complaint Dismissal Memo

Complainant:     Natalya Khimich
Respondent:      Oregon Health & Science University
Case Number:     EEEMRG220805-11212
Date:            June 4, 2023
Investigator:    Michael Mohr

Reviewed By:     _____ Theodore E. Wenk

Complainant alleges that she was discriminated against based on religion in that she disagrees with her religious accommodation request denial by Respondent.

Complainant worked at Respondent medical campus as an RN (Oregon Nursing Association – Employee Group). Her position is described as:

> This position plays a vital role in assuming primary responsibility for and provides direct and indirect professional nursing care to patients in the Recovery, Pre-operation and Post-operation areas of Oregon Health & Sciences University, South Perioperative Services Division. The Perioperative Services use a primary practice model of care, Primary practice, phase I and II recovery. The Registered Nurse (RN) assesses patient's needs, develops the plan of care, implements and evaluates nursing care, provides education and consultation of staff, students, patients and the community.

During Summer of 2021, Respondent became required by state and federal guidance to have staff and students vaccinated against Covid-19 by October 18, 2021, allowing for an accommodation process based upon religious belief and/or disability.

A Respondent Position Statement was received and reviewed. Respondent denied the request holding that Complainant had not established a sincerely held religious belief which required an exemption from the vaccination policy.

Respondent determinatively argues that apart from Complainant's religious belief, her accommodation request to abstain from vaccination in a medical setting was not granted as presenting known health risks to others. As more than a de minimis hardship is presented and there is no evidence of intent to discriminate against Complainant's particular religious belief and/or beliefs; the complaint is accordingly dismissed with issuance of notice of right to sue.

# EXHIBIT "G"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days    Add Days    Workdays    Add Workdays    Weekday    Week №

From **Monday, June 5, 2023 at 12:00:00 midnight**
Added 90 days

## Result: Sunday, September 3, 2023 at 12:00:00 midnight

### Calendar showing period from June 5, 2023 to September 3, 2023

**June 2023**
25 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |  |

**July 2023**
31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |  |  |  |  |  |

**August 2023**
31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |  |  |

**September 2023**
3 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

☐ = Start date (Jun 5, 2023)    ☐ = Final result date (Sep 3, 2023)

## Glossary

**Midnight**
    Midnight here means "The start of the day" rather than "end of day" (00:00 in 24-hour format)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.