UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

NATALYA KHIMICH, an Individual,

        Plaintiff,

   v.

OREGON HEALTH AND SCIENCE UNIVERSITY, a Public Corporation and Governmental Entity, and DOES 1 THROUGH 50, Inclusive, in Their Official and Individual Capacities,

        Defendants.

Case No. 3:23-cv-01239-YY

FINDINGS AND RECOMMENDATIONS

YOU, Magistrate Judge.

**FINDINGS**

    Plaintiff Natalya Khimich brings this lawsuit against her former employer, defendant Oregon Health and Science University ("OHSU"), and Does 1 through 50, unnamed individuals identified as the members of OHSU's Vaccine Exception Review Committee ("VERC"). Plaintiff previously worked at OHSU as a registered nurse and was terminated for failing to comply with OHSU's COVID-19 vaccination policy after her request for a religious exception was denied. Plaintiff asserts that OHSU violated Title VII of the Civil Rights Act by

1 – FINDINGS AND RECOMMENDATIONS

discriminating against her on the basis of her religion. Plaintiff brings a 42 U.S.C. § 1983 claim against the Doe defendants based upon an alleged violation of the Free Exercise Clause of the First Amendment.

Defendants have filed a motion to dismiss plaintiff's § 1983 claim against the Doe defendants under Rule 12(b)(6).[1] For the reasons set forth below, the motion should be GRANTED.

I.     **Motion to Dismiss Standard**

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain facts that "state a claim to relief that is plausible on its face," such that the court can reasonably infer the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the plausibility of the complaint, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). Conclusory allegations of law, however, are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678–79. A complaint must be dismissed for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (internal quotation omitted).

---

[1] The court construes defendants' motion to dismiss, which was directed against plaintiff's original complaint, as a renewed motion to dismiss against plaintiff's amended complaint. After defendants filed their motion to dismiss, ECF 8, plaintiff filed an amended complaint, removing her claim of disparate treatment arising under Title VII of the Civil Rights Act. ECF 12. Defendants have filed a notice informing the court of their intent to renew their motion to dismiss against the amended complaint because the amended complaint does not substantively modify the claim against which the motion to dismiss is lodged. Defendants' Notice, ECF 13.

## II.   Discussion

Plaintiff asserts a 42 U.S.C. § 1983 claim against the Doe defendants, which comprise the members of the VERC, alleging that they violated her First Amendment right to the free exercise of religion.  Am. Compl. ¶ 65, ECF 12.  Plaintiff contends that the VERC members "expressed overt hostility toward the religious beliefs" of OHSU employees, including plaintiff, by "categorically excluding them from receiving religious exceptions."  *Id*. ¶ 61.  Plaintiff cites an email that OHSU purportedly sent "en masse to all of its employees," including plaintiff, that states: "social, political or economic philosophies or personal preferences are not considered to be religious beliefs, and will not qualify a member for a religious exception."  *Id.* ¶ 15, Ex. B.  The email provides a list of "[e]xamples of beliefs that do not qualify for a religious exception," which includes objections based on "fetal cell concerns" and "bodily integrity or sanctity."  *Id.*, Ex. B.  Plaintiff asserts that OHSU also promulgated a policy that "anyone who had received a vaccine of any kind within the previous five years would automatically be denied a religious exception."  *Id.* ¶ 27.  Additionally, plaintiff alleges that the VERC members declared that multiple religious organizations had approved of COVID-19 vaccines, and thereby "pressur[ed] Plaintiff to conform to the prevailing approved religion" and "penalized Plaintiff for adhering to her sincere, religiously-based objections."  *Id.* ¶¶ 62–63.

Plaintiff submitted an exception request to OHSU, citing concerns over the use of "fetal cell" lines, "bodily integrity," and the "belief that the vaccine is unclean."  *Id.* ¶ 30, Ex. C.  In her request, plaintiff also stated that she had an adverse reaction to a flu vaccine she had taken four years prior, which she later learned was developed using fetal cells.  *Id.* ¶ 23, Ex. C.  The VERC denied plaintiff's exception request and later terminated plaintiff.  *Id.* ¶¶ 28, 34, Ex. E.

Defendants contend that the Doe defendants are entitled to qualified immunity. Mot. Dismiss 6, ECF 8. In particular, they assert that plaintiff has not shown that the Doe defendants violated a "clearly established" right. Reply 2, ECF 11.

### A.      Qualified Immunity Standard

Qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense that must be raised by the defendant. *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). A defendant may raise the defense of qualified immunity in a Rule 12(b)(6) motion to dismiss, but dismissal is not appropriate unless the court can determine "based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten*, 251 F.3d at 851).

Once a defendant has properly raised a qualified immunity defense, it is the plaintiff's burden to show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Mohamed Sabra v. Maricopa Cty. Cmty. Coll. Dist.*, 44 F.4th 867, 886 (9th Cir. 2022) (internal quotation marks omitted). Courts may "exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A clearly established right is one that is sufficiently clear such that "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). In determining whether a right is clearly established, the Supreme Court has repeatedly cautioned courts not to define the law at a "high level of generality." *Ashcroft*, 563

4 – FINDINGS AND RECOMMENDATIONS

U.S. at 742. Rather, the court analyzes whether the "violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) ("The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity.") (internal quotations omitted).

The plaintiff need not produce "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019). It is insufficient for precedent to be merely suggestive of a legal principle; "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Perez v. City of Fresno*, 98 F.4th 919, 924 (9th Cir. 2024) (quoting *Wesby*, 583 U.S. at 63).

Even in novel circumstances, officials may be on notice that their conduct violates established law where a constitutional principle applies with "obvious clarity to the specific conduct in question"—or, in other words, where the situation presents "mere application of settled law to a new factual permutation." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 784 (9th Cir. 2022); *see also Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001) ("When the defendant['s] conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established.") (internal quotation marks omitted). For instance, the Supreme Court discussed this principle in *Taylor v. Riojas*, 592 U.S. 7, 8 (2020), where it found that, even in the absence of a factually similar precedent, "under the extreme circumstances of this case," no reasonable officer

5 – FINDINGS AND RECOMMENDATIONS

could have found housing an inmate in "cells teeming with human waste for . . . six days" was constitutional. *Id.*

Thus, the salient question the court undertakes in analyzing qualified immunity is whether the state of the law was such that the defendants had a "fair warning" that their alleged actions were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). To demonstrate that level of notice, the plaintiff must point to controlling precedent "from the Ninth Circuit or Supreme Court" or otherwise a "consensus" of persuasive authority from other courts. *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017); *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021). This is a "demanding standard" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Perez*, 98 F.4th at 924 (quoting *Wesby*, 583 U.S. at 63).

**B.    Application**

As defendants have raised the defense of qualified immunity, the burden is now upon plaintiff to identify cases showing that the Doe defendants violated a right that was clearly established at the time of the conduct in question. Plaintiff offers the following cases which, she argues, promulgated "general constitutional rules" that were violated in this case. *See* Opp. 8, ECF 10.

Plaintiff first contends that the law recognizes a "right to abstain from participating in or supporting abortion in any way." Opp. 14, ECF 10. In support of this proposition, plaintiff cites *Roe v. Wade*, 410 U.S. 113 (1973) (*overruled by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022)), *Doe v. Bolton*, 410 U.S. 179 (1983), and *Harris v. McRae*, 448 U.S. 297 (1980).

Contrary to plaintiff's assertion, while *Roe* and *Bolton* acknowledge religious bases for opposition to certain medical procedures, including abortions and sterilizations, and the right of

6 – FINDINGS AND RECOMMENDATIONS

hospitals and hospital employees to refrain from performing those procedures, they go no further. *See Roe*, 410 U.S. at 116 (recognizing that "religious training [and] one's attitudes toward life and family and their values . . . influence and color one's thinking about abortion"); *Doe v. Bolton*, 410 U.S. 179, 197–98 (1973), *abrogated by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) (upholding the constitutionality of a Georgia statute that permitted hospitals to choose whether to admit a patient for an abortion and the rights of physicians or any other employees "to refrain, for moral or religious reasons, from participating in the abortion procedure"). Indeed, those principles are well-recognized by the Ninth Circuit and other circuit courts. *See Chrisman v. Sisters of St. Joseph of Peace*, 506 F.2d 308, 312 (9th Cir. 1974) ("Here Congress quite properly sought to protect the freedom of religion of those with religious or moral scruples against sterilizations and abortions."); *Watkins v. Mercy Med. Ctr.*, 364 F. Supp. 799, 803 (D. Idaho 1973), *aff'd*, 520 F.2d 894 (9th Cir. 1975) (holding that requiring a hospital to permit an employee to perform abortions "would violate the religious rights of the hospital"); *Doe v. Bellin Mem'l Hosp.*, 479 F.2d 756, 760 (7th Cir. 1973) (affirming the constitutionality of "a state statute or policy which leaves a private hospital free to decide for itself whether or not it will admit abortion patients or to determine the conditions on which such patients will be accepted"). However, *Roe* and *Bolton* do not establish the sweeping principle for which plaintiff advocates.

Plaintiff asserts that *Harris v. McRae* establishes protections for "taxpayers who oppose abortion on religious grounds from having to pay for abortions with their tax dollars." Opp. 14, ECF 10 (quoting *Harris*, 448 U.S. at 319–20). *Harris* held that the Hyde Amendment, a federal statute that limited the use of federal funds to reimburse abortion costs through Medicaid, did not run afoul of the Establishment Clause. 448 U.S. at 319–20 ("In sum, we are convinced that the

7 – FINDINGS AND RECOMMENDATIONS

fact that the funding restrictions in the Hyde Amendment may coincide with the religious tenets of the Roman Catholic Church does not, without more, contravene the Establishment Clause."). Given the *Harris* decision concerns the separation of the church and state under the Establishment Clause, its application to the circumstances in the instant case is not apparent. Like *Roe* and *Bolton*, *Harris*, too, does not elucidate a rule that bears on the Doe defendants' actions here.

Next, plaintiff cites several cases analyzing the Religious Freedom Restoration Act of 1993 ("RFRA"). Opp. 15–16, ECF 10 (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014), and *Little Sisters of the Poor Sts. Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020)). As Judge Immergut explained in a factually analogous case, analyses of laws other than the First Amendment are not usually instructive for showing how a reasonable official would have understood the contours of the allegedly violated First Amendment right. *See Jimenez-Mendez v. Oregon Health & Sci. Univ.*, No. 3:23-CV-01190-IM, 2024 WL 326598, at *6 (D. Or. Jan. 29, 2024) ("Cases concerning constitutional and statutory rights not at issue here could not have shown that Plaintiffs' Free Exercise right's contours were sufficiently definite that any reasonable official in [the VERC members'] shoes would have understood that he was violating it.") (internal quotation marks omitted).

Plaintiff's reliance on RFRA cases is illustrative of this point. RFRA provides broader religious protections than the First Amendment. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 (2014) ("As we have seen, RFRA was designed to provide very broad protection for religious liberty. By enacting RFRA, Congress went far beyond what this Court has held is constitutionally required."). Furthermore, by its clear terms, RFRA applies to the federal government, not state or local governments. *Guam v. Guerrero*, 290 F.3d 1210, 1219 (9th Cir.

8 – FINDINGS AND RECOMMENDATIONS

2002) (citing *City of Boerne v. Flores*, 521 U.S. 507, 532 (1997)) ("The U.S. Supreme Court declared RFRA unconstitutional as applied to the States because Congress exceeded its remedial authority under section 5 of the Fourteenth Amendment."). It is therefore unclear what, if any, application an analysis of RFRA has in the context of the Doe defendants' interactions with employees. And plaintiff has not provided caselaw suggesting that RFRA is applicable in this context. Thus, the RFRA cases cited by plaintiff do not provide an indication of how a reasonable officer would have understood the contours of the First Amendment as applied in the circumstances of this case.

Plaintiff also cites cases concerning compelled speech to support her argument that the Doe defendants impermissibly required employees to disclose their religious beliefs in order to receive exceptions from the vaccine mandate or, in the alternative, censored employees with the threat of unemployment if they disclosed their beliefs. *See* Opp. 17–20, ECF 10 (citing *Nat'l Inst. for Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) ("*NIFLA*"); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995)). First, it should be noted that this line of argument departs from plaintiff's complaint, which exclusively asserts a violation of the Free Exercise clause. Am. Compl. ¶¶ 60–61, ECF 12. Moreover, the Supreme Court's decision in *NIFLA* concerned requirements imposed on crisis pregnancy centers to provide information to clients regarding nearby abortion clinics. 585 U.S. at 755. The *Rosenberger* decision concerned the denial of printing reimbursements for a student-run religious publication. 515 U.S. at 827. The claims in those Supreme Court cases are so categorically different from plaintiff's claim, they provide no rule of law applicable to the instant case.

Plaintiff next cites several cases concerning unemployment benefits. Opp. 21, ECF 10 (citing *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707 (1981), *Hobbie v.*

9 – FINDINGS AND RECOMMENDATIONS

*Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136 (1987), *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829 (1989)). Plaintiff relies on these cases for the proposition that "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where [the state] denies such a benefit because of conduct mandated by a religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden on religion exists." *Id.* (quoting *Thomas*, 450 U.S. 717–18). These cases exclusively concerned the constitutionality of denial of public benefits by states. *See Thomas*, 450 U.S. at 720 (holding that the denial of unemployment benefits to an individual who left his job due to his religious beliefs violated the Free Exercise clause); *Hobbie*, 480 U.S. at 143–44 (holding that the partial denial of unemployment benefits to an individual who was terminated due to religious beliefs she adopted after beginning her employment violated the Free Exercise clause); *Frazee*, 489 U.S. at 829 (holding that the denial of unemployment benefits to an individual who declined a job offer citing his religious beliefs, although those beliefs were not aligned with an established religious sect, violated the Free Exercise clause). Plaintiff has not shown that a reasonable official would have understood these cases to apply here, given that public benefits are not at issue.

Plaintiff then relies on a case addressing the constitutionality of an emergency order regarding worship during the COVID-19 pandemic. Opp. 23, ECF 10 (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)). Plaintiff asserts that the Doe defendants impermissibly burdened religion because their actions were not narrowly tailored, in that they proscribed more religious conduct than necessary to achieve their ends. *Id.* (citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 533 (1993). Plaintiff further argues that the Doe defendants violated the First Amendment by targeting certain religious beliefs for harsh

10 – FINDINGS AND RECOMMENDATIONS

treatment. *Id.* at 24–25. In *Cuomo*, the Supreme Court addressed the unconstitutionality of restrictions that explicitly limited attendance in houses of worship while permitting some secular businesses to admit "as many people as they wish[ed]." *Cuomo*, 592 U.S. at 17 (2020). The Supreme Court described the regulations in *Cuomo* as "far more restrictive than any COVID–related regulations that have previously come before the Court, much tighter than those adopted by many other jurisdictions hard-hit by the pandemic, and far more severe than has been shown to be required to prevent the spread of the virus at the applicants' services." *Id.* at 18. *Cuomo* is categorically different from the instant case because it concerned the inequitable application of occupancy restrictions—this in no way bears on the permissibility of determining whether certain beliefs are religious. Plaintiff has not shown that *Cuomo* would have informed the Doe defendants' understanding of the constitutionality of their actions.

The issue presented by defendants' motion to dismiss is not novel. On five other occasions, judges in this district have evaluated whether qualified immunity bars claims against VERC members. And in each of those cases, the court found that the plaintiffs had not provided precedent showing that the VERC members would have been on notice that their conduct was unlawful and concluded that qualified immunity barred the plaintiffs' claims. *See Trusov v. Or. Health & Sci. Univ.*, No. 3:23-CV-77-SI, 2023 WL 6147251 (D. Or. Sep. 20, 2023); *Mathisen v. Oregon Health & Sci. Univ.*, No. 3:22-CV-1250-SI, 2023 WL 6147099, at *9 (D. Or. Sept. 20, 2023); *Jimenez-Mendez v. Oregon Health & Sci. Univ.*, No. 3:23-CV-01190-IM, 2024 WL 326598, at *7 (D. Or. Jan. 29, 2024); *Hancock v. Oregon Health & Sci. Univ.*, No. 3:22-CV-01254-AN, 2024 WL 493715, at *6 (D. Or. Feb. 8, 2024); *Babiy v. Oregon Health & Sci. Univ.*, No. 3:23-CV-01562-HZ, 2024 WL 1770485, at *7 (D. Or. Apr. 22, 2024).

11 – FINDINGS AND RECOMMENDATIONS

Furthermore, as other judges in this district have noted in factually similar cases, the actions of the VERC are not so obviously infringing or egregious as to justify finding a violation of established law based on general constitutional principles. *See MacDonald*, 2023 WL 5529959 at *11 ("This is not such an obvious or egregious case where, notwithstanding the lack of judicial guidance, the Board and VERC Defendants' conduct was so clearly violative of a constitutional right that they should have known their actions were unconstitutional."); *Mathisen*, 2023 WL 6147099 at *9 (same); *Jimenez-Mendez*, 2024 WL 326598 at *5, n.3 (same). To the contrary, the law as it existed provided a basis for the Doe defendants to believe in the constitutionality of their actions. For instance, the law is unequivocal that constitutional protections only extend to sincere religious beliefs. *Thomas*, 450 U.S. at 713 ("Only beliefs rooted in religion are protected by the Free Exercise Clause, which, by its terms, gives special protection to the exercise of religion."); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). Moreover, there is consensus among courts that a plaintiff's claim may be evaluated to ensure it reflects a sincere religious belief, rather than a personal preference. *See, e.g.*, *United States v. Seeger*, 380 U.S. 163, 185 (1965) (permitting local draft board responsible for evaluating exception claims "to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious"); *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011) ("A prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than a preference for the way a given diet tastes, a belief that the preferred diet is captors."). Thus, the state of the law would not have put the Doe defendants on notice that their conduct was unconstitutional.

Because plaintiff has not shown that the Doe defendants violated a clearly established right, the court need not determine whether defendants acted constitutionally. Qualified immunity bars plaintiff's § 1983 claim against the individual Doe defendants.

Plaintiff seeks injunctive relief in addition to damages for her § 1983 claim. Am. Compl. 13, ECF 12. The Prayer states that, "on all causes of action," plaintiff demands "reinstatement to her position as a nurse at OHSU, complete with vacation time, sick leave, seniority, and healthcare, life/disability insurance, and other benefits fully restored." *Id.* (capitalization removed).

Qualified immunity only bars claims for damages and does not apply to requests for injunctive relief. *Harlow*, 457 U.S. at 818. Nevertheless, plaintiff has not alleged that the Doe defendants are capable of providing the relief that she seeks. Nothing in the complaint suggests that VERC members have authority over employment matters beyond reviewing vaccine exception requests. On a claim for injunctive relief, the plaintiff must identify as a defendant the individual who "can appropriately respond to the injunctive relief." *See Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (quoting *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013)); *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012) (holding that the proper defendant was the individual "responsible for ensuring that injunctive relief was carried out"); *see also Santos Garcia v. San Bernardino Sheriff's Dep't*, No. 5:21-cv-01414-JGB-JDE, 2020 WL 8365260, at *6 (C.D. Cal. Dec. 8, 2020) (dismissing claim for injunctive relief where the plaintiff had not alleged that the defendants could provide the relief he sought). Plaintiff has not alleged that the Doe defendants, as members of the VERC, can "appropriately respond" to her request for injunctive relief.

13 – FINDINGS AND RECOMMENDATIONS

## RECOMMENDATIONS

Defendants' motion to dismiss, ECF 8, should be GRANTED and plaintiff's § 1983 claim should be dismissed with prejudice in its entirety.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Thursday, June 06, 2024. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED May 22, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge